O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENNA CATALAN, | Case No. EDCV 15-285-KK |
| Plaintiff, | |
| v. | MEMORANDUM & ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Enna Catalan ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to Title 28 of the United States Code, section 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

///
///

# I.
# **PROCEDURAL HISTORY**

On February 22, 2012, Plaintiff filed an application for DIB alleging a disability onset date of January 4, 2012. Administrative Record ("AR") at 170. On February 27, 2012, Plaintiff filed an application for SSI, alleging a disability onset date of November 5, 2011. Id. at 172. Plaintiff's applications were denied initially on May 21, 2012, and upon reconsideration on February 15, 2013. Id. at 106, 114.

On March 8, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). See id. at 121. On September 13, 2013, the ALJ held a hearing at which Plaintiff appeared with counsel and testified. Id. at 27. A vocational expert ("VE") also testified at the hearing. Id. at 43.

On October 18, 2013, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Id. at 20. On November 5, 2013, Plaintiff filed a request for the Agency's Appeals Council to review the ALJ's decision. Id. at 5. On December 19, 2014, the Appeals Council denied Plaintiff's request for review. Id. at 1.

On February 17, 2015, Plaintiff filed the instant action. Dkt. 1, Compl. This matter is before the Court on the parties' Joint Stipulation ("JS"), filed February 2, 2016, which the Court has taken under submission without oral argument. Dkt. 16, JS.

# II.
# **PLAINTIFF'S BACKGROUND**

Plaintiff was born on September 20, 1973, and her alleged disability onset dates are November 5, 2011 and January 4, 2012. AR at 170, 172. She was thirty-eight years old on the alleged disability onset dates and thirty-nine years old at the time of the hearing before the ALJ. Id. Plaintiff has a high school diploma, and prior work history as a cashier, food handler, machine operator, and shipping and receiving packer. Id. at 29, 229. Plaintiff alleges disability based on schizophrenia. Id. at 198.

2

# III.

# **STANDARD FOR EVALUATING DISABILITY**

To qualify for DIB or SSI, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[1]

(4) Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54

---

[1] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

(9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## THE ALJ'S DECISION

### A. STEP ONE

At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity since November 5, 2011,[2] the alleged onset date" of disability. AR at 11 (citations omitted).

### B. STEP TWO

At step two, the ALJ found Plaintiff had the "following severe impairments: schizophrenia, major depressive disorder with psychotic features, bipolar disorder, lumbago, and lumbar radiculitis." Id. (citations omitted).

### C. STEP THREE

At step three, the ALJ found Plaintiff "d[id] not have an impairment or

---

[2] Plaintiff's DIB application alleges a disability onset date of January 4, 2012, while Plaintiff's SSI application alleges a disability onset date of November 5, 2011. AR at 170, 172. Further, the parties Joint Stipulation lists January 4, 2012 as the onset date of Plaintiff's disability, while the ALJ's decision lists November 5, 2011 as the onset date of Plaintiff's disability. Id. at 11; JS at 2. The parties do not raise the Plaintiff's disability onset dates and the issue is not relevant to the claims presented. See Dkt. 24. Thus, the Court declines to address it.

4

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart R, Appendix 1." Id. at 11-12 (citations omitted).

### D. RFC DETERMINATION

The ALJ found Plaintiff had the following RFC:

> to perform a limited range of medium exertion. [Plaintiff] can lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently. She can stand and walk for about six hours of an eight-hour workday, and she can sit for about six hours out of an eight-hour workday. She can frequently climb, balance, stoop, kneel, crouch, and crawl. She is limited to simple and repetitive tasks with no public interaction.

Id. at 12 (citations omitted).

### E. STEP FOUR

At step four, the ALJ found Plaintiff was "capable of performing past relevant work as a hand packer. This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity." Id. at 18 (citations omitted). Accordingly, the ALJ found Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 5, 2011" and ended his analysis. Id. at 19.

## V.
## PLAINTIFF'S CLAIMS

Plaintiff presents two disputed issues:

1. Whether the ALJ properly assessed probative medical source opinions.
2. Whether the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony.

JS at 4. The Court finds the first issue with respect to Plaintiff's mental conditions dispositive, and thus declines to address the remaining issue. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons

stated, we decline to reach [Plaintiff's] alternative ground for remand."); Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[T]his Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## VI.
## **STANDARD OF REVIEW**

Pursuant to Title 42 of the United States Code, section 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating a reviewing court "may not affirm simply by isolating a specific quantum of supporting evidence" (citations and internal quotation marks omitted)). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if

1 it is "clear from the record" that the error was "inconsequential to the ultimate
2 nondisability determination." <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir.
3 2006) (citation and internal quotation marks omitted).

## VII.
## RELEVANT FACTS

**A.   MEDICAL OPINIONS OF PLAINTIFF'S MENTAL LIMITATIONS**

In making his RFC determination, the ALJ acknowledged, "[t]he evidence of record reflects that claimant has a long history of mental illness." AR at 13. As early as July 1, 1999, Plaintiff received mental health treatment when she was admitted to the St. Francis Medical Center ("SFMC") for five days following her attempt to take her own life. <u>Id.</u> at 310-11. The medical records prepared by Medical Doctor Martin Fischer noted Plaintiff "tried to choke herself with a rope. She said that she intended to kill herself." <u>Id.</u> at 310. Dr. Fischer also noted Plaintiff reported irregular sleep, constant crying, irregular appetite, and hearing voices. <u>Id.</u> Dr. Fischer opined Plaintiff had impaired insight and judgment, and "appeared perplexed and had difficulty concentrating." <u>Id.</u> Dr. Fischer diagnosed Plaintiff with "Schizophrenia, paranoid type." <u>Id.</u> at 311. Other records document Plaintiff's mental health condition and treatment between June 2003 and January 2013 as follows:

- On June 15, 2003, Plaintiff sought emergency room treatment at SFMC for "[s]uicide ideation." <u>Id.</u> at 272-73. Medical Doctor Michael Stephen stated Plaintiff was "a danger to herself and others" and diagnosed Plaintiff with "Psychosis, not otherwise specified." <u>Id.</u> at 273.
- On June 16, 2003, Dr. Fischer stated Plaintiff "was on a 72-hour hold" at SFMC. <u>Id.</u> at 269. Dr. Fischer noted Plaintiff felt agitated, paranoid, and "as if she wanted to shoot herself." <u>Id.</u> Dr. Fischer also noted Plaintiff had "a history of prior suicide attempts in earlier years" and "had tried to take someone else's baby while waiting in the emergency department waiting room." <u>Id.</u> Dr. Fischer again diagnosed Plaintiff with "Schizophrenia,

paranoid type." Id.

- On September 22, 2004, Plaintiff had an "Individual Session" with a Mental Health Counselor and Registered Nurse. Id. at 332. Notes from the Individual Session state Plaintiff reported feeling depressed, having a poor memory, and experiencing "auditory/visual hallucinations." Id.
- On November 7, 2011, Plaintiff sought emergency treatment at the Telecare Mental Health Urgent Care Center ("TMHUCC") and Medical Doctor Rick Jenkins treated Plaintiff. Id. at 474-85. Dr. Jenkins noted Plaintiff's presenting symptoms as "depressed, crying, anxious, moody, racing thoughts, paranoid, poor sleep, and psychotic." Id. at 475. Dr. Jenkins also noted Plaintiff's mental health issues included her inability to care for herself, psychosis, depression, anxiety, and confusion. Id. at 477. Dr. Jenkins diagnosed Plaintiff with bipolar disorder and "Psychotic NOS," assigned Plaintiff a GAF of 40, and prescribed Plaintiff Saphris and Celexa. Id. at 474, 478-79, 485.
- On December 7, 2011, Plaintiff sought treatment at the Morongo Basin Mental Health Clinic. Id. at 445-50. Medical Assistant Dorio noted Plaintiff presented with audio and visual hallucinations, and a history of suicide risk. Id. at 445. Medical Assistant Dorio also noted Plaintiff had some short term memory loss, paranoia when not on medication, and audio and visual hallucinations when not on medication. Id. at 448. In addition, a Licensed Marriage and Family Therapist examined Plaintiff and diagnosed her with "major depressive disorder, recurrent, severe, with psychotic features" and "trouble concentrating [at] work." Id. at 450.
- On April 11, 2013, Medical Doctor Aubrey King of TMHUCC performed a Psychiatric Assessment of Plaintiff. Id. at 486. Dr. King diagnosed Plaintiff with schizophrenia, noted Plaintiff's hallucinations, gave Plaintiff a GAF of 51, and prescribed two medications. Id. at 486-88.

- On May 30, 2013 Dr. King performed a follow-up Psychiatric Assessment, in which Dr. King diagnosed Plaintiff with schizophrenia, noted Plaintiff's hallucinations, assigned Plaintiff a GAF of 65, and prescribed two medications. Id. at 488.
- On July 3, 2013, Dr. King performed a follow-up Psychiatric Assessment, in which Dr. King diagnosed Plaintiff with schizophrenia, noted Plaintiff's hallucinations, assigned Plaintiff a GAF of 55, and prescribed two medications. Id. at 487.
- On January 27, 2013, Medical Doctor and Board Eligible Psychiatrist Ernest A. Bagner III performed a Complete Psychiatric Evaluation of Plaintiff at Defendant's request. Id. at 458. Dr. Bagner listed the following diagnoses of Plaintiff: (1) schizophrenia, paranoid type; (2) problem related to social environment; (3) occupational problem; (4) economic problem; and (5) health problem. Id. at 459. Dr. Bagner noted Plaintiff "admitted to auditory and visual hallucinations." Id. at 458. In addition, Dr. Bagner opined Plaintiff had: (1) marked limitations in her ability to "respond to changes in a routine work setting" and "respond to work pressure in a usual work setting;" (2) moderate limitations in her ability to "follow detailed instruction," appropriately interact with "the public, co-workers and supervisors," and perform daily activities; and (3) mild limitations in her "ability to follow simple, oral and written instruction." Id. at 459.

## B. PLAINTIFF'S TESTIMONY

At the hearing on September 13, 2013, Plaintiff testified regarding the effect of her mental health issues. She stated, "It bothers me to be around people . . . because I always think they're like against me or something, and they're talking about me. It feels very uncomfortable." Id. at 32. Plaintiff testified she saw a psychiatrist once a month and took two different medications. Id. at 33. With respect to auditory hallucinations, Plaintiff stated "I have voices on [sic] my head all the time." Id. at 34. When asked to

describe the voices, Plaintiff stated "I would describe them evil, because that's what I get, like evil thoughts." Id. Plaintiff further testified the voices were there "all the time, but I sometimes, I guess, I don't pay attention to them, especially when they're bad thoughts." Id. With respect to visual hallucinations, Plaintiff testified to seeing "shadows," stating "I like have to sleep with the lights on, because I actually think I see someone just standing there." Id. at 35.

Plaintiff testified she had a "psychotic break down" in March of 2012 and was taken by her sister to a crisis center in Long Beach. Id. at 36, 39. When asked what happened when Plaintiff had a psychotic breakdown, Plaintiff stated, "I lose my mind completely . . . I get suicidal thoughts, I get thoughts of hurting other people, even my own kids." Id. at 40. Plaintiff continued, "[t]he voices get strong. I see stuff and I feel like people are chasing me, that everybody against -- it's against me, even my own family." Id.

**C.   VOCATIONAL EXPERT'S TESTIMONY**

At the hearing on September 13, 2013, the ALJ asked the VE two hypothetical questions. Id. at 44. First, the ALJ described a hypothetical individual as follows:

> with the same age, education, and work experience [as Plaintiff] . . .[w]ho can carry, push, or pull 15 pounds occasionally, 25 pounds frequently, stand and walk for about six hours out of eight. Postural activities, which is climbing, balancing, stooping, kneeling, crouching, crawling, could be performed on a frequent basis. Simple and repetitive task. No interaction with the public.

Id. The ALJ asked whether the individual could perform Plaintiff's past work. Id. The VE stated the individual could perform "the work of the hand packer as it was performed and as generally performed," the work of a hospital cleaner, and the work of a laundry worker. Id. at 44-45. Second, the ALJ described a hypothetical individual who had the same limitations as the first except "to add that [individual] will miss work more than three days per month due to various impairments. Using that second hypothetical . . .

could an individual with those limitations perform [Plaintiff]'s past work?" Id. at 45. The VE answered, "[i]f the missing more than three days a month occurs month after month and year after year, that would eliminate competitive employment." Id.

In addition, Plaintiff's counsel asked the VE two hypothetical questions. Id. at 45-46. First, Plaintiff's counsel described a hypothetical individual "with the same limitations as a person in hypothetical one [and] would also have the added limitation that this person would be unable to respond to changes in the work routine or respond to work pressure appropriately." Id. Plaintiff's counsel asked if the individual could perform Plaintiff's past relevant work. Id. at 46. The VE answered "this is all simple repetitive work, so there wouldn't really be changes in routine or pressures. So, it wouldn't eliminate the work of the hand packer." Id. Second, Plaintiff's counsel described another hypothetical individual with "the same limitations as in hypothetical number one, with the added limitation that this person would need constant reminders . . . about three times per day." Id. The VE answered "[t]hat over time would not be accepted by employers and therefore would eliminate competitive employment." Id.

## VIII.
## DISCUSSION

### A.   APPLICABLE LAW

Where an ALJ has found a severe medically determinable impairment at step two of the sequential analysis, "all medically determinable impairments must be considered in the remaining steps of the sequential analysis." Hill, 698 F.3d at 1161 (internal quotation marks omitted). Accordingly, where an ALJ makes an RFC determination that accounts for certain limitations, but fails to explain "h[er] dismissal of other claimed limitations," a court may find "substantial evidence does not support the ALJ's . . . RFC determination." Robbins, 466 F.3d at 885.

In <u>Brink v. Comm'r Soc. Sec. Admin.</u>, 343 F. App'x 211 (9th Cir. 2009),[3] the Ninth Circuit found the ALJ erred by accepting medical evidence that a claimant had "difficulty maintaining concentration, persistence, or pace," but failing to include such limitations in the hypothetical question posed to the VE. <u>Id.</u> at 212. In its finding, the Ninth Circuit rejected the "Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace." <u>Id.</u> District courts have followed <u>Brink</u> and found reversible error when an ALJ fails to adequately address a claimant's limitations in concentration, persistence, and pace in her RFC assessment and VE hypotheticals. <u>E.g.</u>, <u>Nicholas v. Colvin</u>, No. CV 15-347-PLA, 2015 WL 7194177, at *4 (C.D. Cal. Nov. 16, 2015) ("the ALJ's RFC and hypotheticals only reflected a limitation to 'simple instructions and decisions,' which, as discussed in . . . <u>Brink</u>, . . . , does not fully address plaintiff's moderate difficulties in concentration, persistence, and pace"); <u>Tucker v. Colvin</u>, No. CV 14-08146-AG (RAO), 2015 WL 7737300, at *1 (C.D. Cal. Nov. 30, 2015); <u>Juarez v. Colvin</u>, No. CV 13-2506-RNB, 2014 WL 1155408, at *7 (C.D. Cal. Mar. 20, 2014).

**B.  ANALYSIS**

Here, the ALJ found Plaintiff's severe medically determinable impairments included schizophrenia, major depressive disorder with psychotic features, and bipolar disorder. AR at 11. However, the ALJ failed to consider the limitations caused by those impairments "in the remaining steps of the sequential analysis." <u>See</u> <u>Hill</u>, 698 F.3d at 1161 (internal quotation marks omitted).

Like the plaintiff's medical records in <u>Brink</u>, Plaintiff's medical records established she had "difficulties with concentration, persistence, or pace." <u>See</u> <u>Brink</u>, 343 F. App'x at 212. Among other things, treating physicians noted Plaintiff presented with anxiety, confusion, and audio and visual hallucinations. AR at 448, 458, 477, 486. In

---

[3] The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R.App. P. 32.1(a).

addition, Plaintiff was diagnosed on multiple occasions with bipolar disorder, psychosis, major depressive order, and schizophrenia. Id. at 450, 479, 484, 488. Other treatment records noted Plaintiff's inability to care for herself, difficulty with concentration, problems with social environments, and difficulties with responding to changes, pressure, and instructions. Id. at 450, 459, 477

These medical records, thus, establish restrictions as to concentration, persistence, and pace. Despite this, the ALJ failed to address these limitations in Plaintiff's RFC or in the hypothetical questions presented to the VE. Instead, the ALJ's RFC finding and hypothetical questions only reflected a limitation to "simple and repetitive tasks with no public interaction," which fails to fully address Plaintiff's difficulties in concentration, persistence, and pace. See Brink, 343 F. App'x at 212.

Defendant improperly relies on Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008), to support her position. In Stubbs-Danielson, a physician identified the claimant as having "slow pace, both in thinking & actions," but nevertheless found she was able to "carry-out simple tasks." Id. at 1173. The Ninth Circuit found the ALJ's assessment of the claimant's concentration, persistence, or pace adequately incorporated the claimant's restrictions. Id. The court reasoned "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." Id. (citations omitted).

However, unlike the plaintiff's medical records in Stubbs-Danielson, Plaintiff's medical records did not support finding Plaintiff is capable of simple, repetitive work, despite any limitations in concentration, persistence, or pace. Rather, Plaintiff's medical records revealed more than "only [one] concrete restriction" to "simple tasks." See id. at 1174. The ALJ's RFC assessment of Plaintiff, thus, failed to adequately capture her mental limitations and the assessment was inconsistent with restrictions specifically identified in the medical opinions.

Accordingly, the ALJ's RFC determination failed to adequately address Plaintiff's

limitations as to concentration, persistence, and pace; hence, "substantial evidence does not support the ALJ's . . . RFC determination." See Robbins, 466 F.3d at 885.

## IX.

## **RELIEF**

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill, 698 F.3d at 1162 (citation and internal quotation marks omitted). "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. (citation and internal quotation marks omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id. (citations omitted); see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

In this case, the record has not been fully developed. The ALJ must reassess Plaintiff's limitations and their impact on the disability determination. Accordingly, remand for further proceedings is appropriate. See Hill, 698 F.3d at 1162.

///
///
///
///
///
///
///
///
///

## X.
## **ORDER**

For the foregoing reasons, IT IS ORDERED judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order.  IT IS FURTHER ORDERED the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: FEBRUARY 10, 2016

                                                                             _____
HONORABLE KENLY KIYA KATO
UNITED STATES MAGISTRATE JUDGE

15